IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONI MITCHELL, in her own capacity and as friend and next of kin of RODDRICK MITCHELL, a minor, DEIDRE BAUMANN, and FITZGERALD ROBERTS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>VILLAGE OF DIXMOOR, a municipal Corporation,<br>RONALD BURGE SR.<br>RONALD BURGE JR.<br>JOSE VILLEGAS,<br>HASHI JACO,<br>KEITH WILLOUGHBY<br>MARQUISE DAY,<br>BILLY MOORE,<br>Dixmoor Police Officers,<br><br>　　　　Defendants. | JURY DEMANDED |

## COMPLAINT

The Plaintiffs, TONI MITCHELL (hereinafter "MITCHELL"), RODDRICK

MITCHELL (hereinafter "RODDRICK"), DEIDRE BAUMANN, and FITZGERALD

ROBERTS, by and through their attorneys, DVORAK LAW OFFICES, LLC, hereby

complain against the Defendants, VILLAGE OF DIXMOOR, RONALD BURGE SR.,

RONALD BURGE JR., JOSE VILLEGAS, HASHI JACO, KEITH WILLOUGHBY,

MARQUISE DAY, and BILLY MOORE, (hereinafter, collectively, "the Defendant

Officers") stating as follows:

1

## Jurisdiction and Venue:

1. The incidents in question largely occurred in 2019, in Dixmoor and Robbins, in Cook County, Illinois.

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, § 1988 and 28 U.S.C. § 1331, and § 1343(a); the Constitution of the United States; 18 U.S.C. § 1962(c), and pendant jurisdiction as provided under 28 U.S.C. § 1367(a).

3. Venue is proper under 28 U.S.C. § 1391(b)(2) as all parties resigned in this judicial district and all underlying events pertaining to the claims occurred within this District.

## Parties:

4. The Plaintiffs reside in Cook County, Illinois.

5. Plaintiffs MITCHELL and ROBERTS were, at all times relevant to this Complaint, members of the Dixmoor Board of Trustees.

6. Plaintiff BAUMANN is an attorney who represented Plaintiff MITCHELL in a criminal matter further described below. BAUMANN is also a judicial candidate running for circuit judge.

7. RODDRICK is the minor son of the Plaintiff TONI MITCHELL.

8. The Defendant VILLAGE OF DIXMOORE ("Defendant Village") is a municipal corporation located in Cook County, Illinois.

9.  The Defendant Officers were, at all times relevant to the Complaint, members of the Dixmoor Police Department, acting in the course and scope of their employment with the Defendant Village, and acting under color of law.

## Facts and Claims:

### Background leading to the Retalitory and/or Intimidating Acts

10. Defendant BURGE SR. is the Chief of Police of the VILLAGE OF DIXMOOR.

11. BURGE SR. was previously hired on January 1, 2014 by another Dixmoor mayor, Dorothy Armstrong, but then fired for misconduct.

12. In 2017, the current Mayor (sometimes referred to as the Village President but referred to as "the Mayor" in this Complaint), Yvonne Davis, re-hired BURGE SR.

13. Aside from being fired previously by Dixmoor for misconduct, upon information and belief, BURGE SR. was dismissed from a previous employer, the Harvey Illinois Police Department, on three occasions for misconduct, including but not limited to stealing golf clubs from an evidence locker.

14. Additionally, before being hired by the Mayor, BURGE SR. was arrested on domestic battery chargers.

15. Additionally, before being hired by the Mayor, BURGE SR. was charged with various criminal offenses, including but not limited to battery and obstruction in the 1990s.

16. Defendant BURGE JR., also a Dixmoor police officer, is BURGE SR.'s son.

17. After BURGE SR. was appointed Chief by the Mayor, Defendant BURGE JR. was appointed as a Commander at the Dixmoor Police Department, not due to any legitimate qualifications, but because he was the son of the Chief.

18. BURGE JR. is currently under indictment in Illinois on felony official misconduct charges for using excessive force against a senior citizen, the foreseeable outcome of BURGE SR. hiring an unqualified person as Commander and his approval of his son's previous known use of excessive force, including the excessive force used in this case.

19. Plaintiffs MITCHELL and ROBERTS are Dixmoor Village Trustees who publicly oppose the Mayor and the Chief for their corrupt acts and have publicly indicated – and continue to indicate publicly –that BURGE SR should be investigated for his corrupt acts.

20. MITCHELL and ROBERTS have continually raised concerns within the Village about the Mayor taking unauthorized salary payments, and the Chief and his officers also taking unauthorized salary payments.

21. The Mayor has since admitted to taking unauthorized salary payments from 2017 to 2019 in excess of $60,000.

22. Upon information and belief, the Chief, his son, and other Village police officers aligned with the Chief and willing to do his bidding, including the Defendant Officers in this case, were rewarded with salary payments in the form of overtime payments, an issue that is current under investigation by the Cook County State's Attorney's Office.

4

23. MITCHELL and ROBERTS also raised concerns within the Village of BURGE SR. hiring police officers, including BURGE JR., without the required board approval.

24. The Chief serves at the pleasure of the Mayor, not the Village Trustees, who have no power to fire the Chief.

25. The Chief, meanwhile, is in charge of disciplining and promoting police officers, including his son and the other Defendant Officers named in this Complaint.

26. Plaintiff MITCHELL was initially appointed to her seat by the Mayor, but subsequently made her differences with the Mayor and the Mayor's corrupt acts public and has subsequently been elected to the seat in her own right, with the Mayor and the Chief opposing her election.

27. In addition to the rift between the Mayor, an ally of the Chief, and MITCHELL, BURGE SR. and BURGE JR. took their actions out of spite for MITCHELL making a sexual harassment allegation to Human Resources against BURGE JR., which angered the Chief and his son.

28. Plaintiff ROBERTS' service as a Trustee pre-dated Plaintiff MITCHELL's appointment. He has been in political opposition to the Mayor and has raised questions concerning corrupt acts done by the Mayor and the Chief, including but not limited to unauthorized salary payments, and the appointment of officers without the approval of the board.

29. MITCHELL joined ROBERTS in publicly advocating for an investigation of the corrupt acts of the Mayor and the Chief. ROBERTS also supported MITCHELL when she made an internal complaint about the sexual harassment suffered by BURGE JR.

30. Both would have been considered witnesses in any sort of disciplinary action against BURGE JR. and/or any civil action against BURGE JR. and/or the Village.

31. The open advocacy of an investigation into the corrupt acts of the Mayor and the Chief has angered the Chief and the Mayor, and has resulted in the Chief taking several acts not only to retaliate against ROBERTS and MITCHELL for their actions, but also to intimidate them into stopping their advocacy for investigating these corrupt acts.

32. BURGE SR. began a sustained campaign of harassment, himself and through the Defendant Officers and/or other Village police officers, against Plaintiffs MITCHELL and ROBERTS.

33. For example, BURGE SR. controls the keys to the Village Hall and has given keys to the Mayor's allies but has refused to give those keys to MITCHELL and ROBERTS, who, to this day, do not have access to their own municipal government offices.

34. As a result of their elections, MITCHELL AND ROBERTS are entitled to keys to the Village offices.

35.    However, without having these keys, it is impossible for MITCHELL and
ROBERTS to hold committee meetings, and has made it not only more
difficult to do the jobs they were elected to do, but also this has hindered their
ability to investigate the Mayor and the Chief for their corrupt acts, which is
one of the reasons why the Chief took his actions, *i.e.* to intimidate and
prevent MITCHELL and ROBERTS into stopping their investigation into the
corrupt acts of the Mayor and Chief.

36.    Additionally, BURGE SR. has subjected MITCHELL and ROBERTS to a
pattern of police harassment and civil rights violations, further described
below.

37.    These acts were part of an overall conspiracy to retaliate, through one or
more agreements with the Defendant Officers and/or other Village police
officers, against MITCHELL and ROBERTS for their calls to investigate the
corrupt acts of the Mayor and the Chief, but also to prevent and intimidate
them from taking actions that would allow them to investigate these corrupt
acts, which includes the investigation of unauthorized salary increases by the
Mayor, the Chief and his favored police officers, including the Defendant
Officers.

38.    MITCHELL's son, RODERICK, and MITCHELL's attorney, BAUMANN,
were collateral damage as part of this unconstitutional conspiracy by the
Chief and his officers against MITCHELL and ROBERTS.

The Arrests and Prosecutions of the MITCHELLS and Attorney BAUMANN

39. On the morning of Sunday, April 14, 2019, Defendant Officers JACO, WILLOUGHBY and DAY arrived at MITCHELL's home.

40. They detained MITCHELL, telling her that she had to be taken to the station "for questioning" and that it had to do with "obstruction" but that BURGE SR. knows what it is about.

41. MITCHELL had committed no crime and JACO, WILLOUGHBY and DAY had no probable cause to believe that she had committed a crime.

42. These Officers took MITCHELL to the Robbins, Illinois police station, where she was kept for nearly 24 hours without having access to a phone and without being interviewed. VILLEGAS then took MITCHELL to the Dixmoor Police station where she was charged with obstructing an officer.

43. Defendants JACO, WILLOUGHBY and DAY, falsely alleged that MITCHELL had interfered in a Dixmoor police investigation involving her adult son, Maurice, who was suspected of serious crimes including domestic battery.

44. The false details of MITCHELL's alleged criminal obstruction were publicized in the Chicago-area media, causing MITCHELL embarrassment and damaging her reputation.

45. Additionally, on May 3, 2019, RODDRICK, MITCHELL's minor son, was at or near MITCHELL's home when Defendant BURGE JR. approached RODDRICK and, acting unreasonably and without lawful justification,

grabbed RODDRICK's neck painfully and shoved him against the side of the house.

46. BURGE JR. subsequently took RODDRICK to the police station and he was later released.

47. RODDRICK had committed no crime and BURGE JR. had no probable cause to believe that RODDRICK had committed a crime.

48. Nevertheless, BURGE JR. caused RODDRICK's mother, MITCHELL, to be cited for an ordinance violation for public nuisance based on the alleged misconduct of her son.

49. The nuisance citation was ultimately dismissed in a manner consistent with the fact that neither RODDRICK, nor his mother, MITCHELL, had violated any local or state statute or ordinance.

50. On May 9, 2019, Plaintiff MITCHELL was to be sworn in for her first elected term as Village Trustee, after a campaign in which her candidacy was opposed by the Mayor and BURGE SR.

51. On the morning of the previous day, May 8, 2019, MITCHELL and her criminal defense attorney, Plaintiff BAUMANN, drove to the trailer park where Myeisha, the mother of MITCHELL's grandchildren resided.

52. Myeisha was in custody over a Minnesota criminal matter and had given MITCHELL permission to access her trailer.

53.     Additionally, BAUMANN needed to serve a subpoena on an employee of the
        trailer park management to secure her presence as a witness in MITCHELL's
        then-pending criminal case, which was set for trial on May 22, 2019.

54.     MITCHELL and BAUMANN waited outside the management's office for
        approximately fifteen minutes.

55.     The employee did not appear, and BAUMANN and MITCHELL went to
        Myeisha's trailer.

56.     There they found Defendant Officer VILLEGAS outside.

57.     VILLEGAS appeared to monitor them but gave no indication that he was
        there to arrest them.

58.     BAUMANN and MITCHELL entered the trailer home, with the permission of
        Myeshia, and found the trailer home ransacked of nearly all of its contents.

59.     Meanwhile, MITCHELL also removed a few of her belongings from the
        ransacked trailer.

60.     BAUMANN and MITCHELL visited various neighbors and asked if they had
        seen anybody remove items from the trailer.

61.     As MITCHELL and BAUMANN were about to leave, VILLEGAS told
        BAUMANN that she had no permission to be on the property and that
        BURGE SR. had ordered that BAUMANN and MITCHELL be arrested.

62.     BAUMANN then called 911 and was transferred to the Dixmoor Police
        Station.

63.    While waiting on hold, Defendants BURGE JR. and MOORE arrived and arrested MITCHELL and BAUMANN.

64.    BURGE JR. double-cuffed BAUMANN unreasonably tightly and painfully and, unreasonably and without lawful justification, yanked her arm painfully, despite the fact that BAUMANN was offering no resistance.

65.    BAUMANN and MITCHELL had committed no crimes and BURGE JR. and MOORE had no probable cause to believe that either BAUMANN or MITCHELL had committed a crime.

66.    BAUMANN was charged with criminal trespass to property and was released that afternoon.

67.    MITCHELL was also charged with criminal trespass to property; however, she was not released with BAUMANN, even though there would have been no valid reason to delay her release any longer than her co-arrestee.

68.    Hours went by without MITCHELL being released, and it soon became apparent to BAUMANN that BURGE SR. intended to hold MITCHELL long enough to cause MITCHELL to miss her swearing-in ceremony, scheduled for the next day.

69.    Thereafter, BAUMANN filed a habeas corpus petition in the case of *People of the State of Illinois v. Toni Mitchell*, in Case Number 19HCC002-0l, which allowed MITCHELL to get out of custody just in time to be sworn in, although she was emotionally and physically drained from the experience, thus ruining her proud moment.

70.   The arrest and the purposeful delay of releasing MITCHELL were an attempt by BURGE SR. to retaliate against MITCHELL for her public support of investigating the Chief and the Mayor, and was an attempt to discredit, embarrass and intimidate MITCHELL into stopping her calls for an investigation.

71.   The trespass charges against MITCHELL and BAUMANN were subsequently dismissed in a manner consistent with their innocence.

72.   The Defendant Officers' conduct with respect to MITCHELL, her son RODDRICK, and her attorney BAUMANN, was willful and wanton, unreasonable, and capricious, and caused MITCHELL, RODDRICK, and BAUMANN damages including but not limited to loss of liberty, pecuniary and emotional damages, and damage to the reputation of MITCHELL an elected official, and BAUMANN, a Cook County judicial candidate.

   The Surviellance, Following and Intimidation of Mitchell and Roberts

73.   Plaintiff ROBERTS is a friend and political ally of MITCHELL, and is also a Village Trustee.

74.   Like MITCHELL, ROBERTS is opposed to BURGE SR.'s employment with the Defendant Village and has had public differences with the Mayor and the Chief, taking issue with certain corrupt acts done by the Mayor and the Chief.

75.   Beginning in May of 2019, upon information and belief, BURGE SR. authorized a campaign of following and surveillance of ROBERTS and

MITCHELL, even at times outside the jurisdiction of the Village, in an attempt to retaliate against ROBERTS and MITCHELL for investigating the corrupt acts by the Mayor and Chief, and also in an attempt to intimidate them into stopping their advocacy for investigations.

76. On the afternoon of May 1, 2019, ROBERTS and MITCHELL went to a Portillo's restaurant location in Crestwood, Illinois, outside the jurisdiction of Dixmoor.

77. ROBERTS noticed that he and MITCHELL were being conspicuously followed by Defendant Officer DAY.

78. Later that afternoon, a Dixmoor police vehicle parked in front of Plaintiff ROBERTS' house for an extended period of time.

79. On May 3, 2019, Defendant Officer MOORE inexplicably approached Plaintiff ROBERTS and began staring at him and subsequently videotaping him, on ROBERTS' property, for no reason.

80. On May 16, 2019, BURGE SR. approached Plaintiff ROBERTS at Village Hall and told ROBERTS ominously that he should "drive safe and stay safe."

81. BURGE SR. spoke these words and singled out ROBERTS in a manner that was clearly calculated to intimidate and threaten ROBERTS.

82. On May 21, 2019, at approximately noon, Dixmoor police vehicles inexplicably appeared to monitor ROBERTS for an extended period before speeding away.

83. On May 31, 2019, Defendant MOORE wrote ROBERTS a ticket for illegal dumping, entailing a $500.00 fine, even though ROBERTS had merely moved some fallen branches from the street into his own truck. The branches had been obstructing a bus lane, and ROBERTS believed it was his civic duty as a Village Trustee to make sure the streets of Dixmoor were safe.

84. This ticket was part of the conspiracy to intimidate ROBERTS, and MOORE engaged in this malicious prosecution knowing there was no lawful justification for the ticket, and knowing that he was helping the Chief in his conspiracy against ROBERTS.

85. The ticket was later dismissed in a manner consistent with the innocence of the Plaintiff.

86. MITCHELL was also followed and surveilled at around this same time period.

87. On numerous occasions MITCHELL was followed by Dixmoor police cars, and at times, upon information and belief, this following and surveillance appeared to be done by private investigators outside the jurisdiction of Dixmoor.

88. Some of the officers who did the surveillance and following included Defendants DAY, BURGE JR., and MOORE.

89. DAY, in fact, constantly parked outside MITCHELL'S house in an attempt to intimidate her.

90.    There was no basis for this following and surveillance, and it was done, upon information and belief, with the authorization and at the behest of BURGE SR. as part of his attempts to retaliate against ROBERTS and MITCHELL, and also to intimidate them further into raising corruption issues against the Mayor and the Chief.

<u>The False Arrest and Excessive Use of Force on Roberts</u>

91.    On June 13, 2019, at a Village meeting, Defendant BURGE SR. stated publicly that ROBERTS has spoken ill of BURGE SR.'s Police Department, and that ROBERTS, or any other persons speaking out about the Chief, would need "bond money" if such actions continued.

92.    ROBERTS did not back down, and following up on his threat, on the evening of June 15, 2019 at approximately 5:40 p.m., ROBERTS was approached by Defendant DAY, who seized ROBERTS and painfully handcuffed him with unreasonably tight handcuffs.

93.    Defendant DAY cursed ROBERTS and shoved him against a wall.

94.    Defendant DAY informed ROBERTS that he was under investigation "per the Chief."

95.    ROBERTS had committed no crime and Officer DAY knew he had no probable cause to believe that ROBERTS had committed any crime.

96.    ROBERTS spent an hour and a half in the police car in terrible wrist pain before being taken to the station.

97.    Defendant Officer VILLEGAS spoke with ROBERTS at the station.

15

98.  Despite ROBERTS pleas for help, VILLEGAS refused to loosen or remove the cuffs.

99.  ROBERTS subsequently gave a statement about what had happened and was taken home without charges.

100.  ROBERTS was later treated for injuries to his wrists at a nearby hospital.

<u>Defamation/Libel of ROBERTS</u>

101.  At a subsequent Village board meeting on October 9, 2019, BURGE SR. distributed multiple copies to the public of documents making several defamatory and/or libelous comments about ROBERTS.

102.  While these defamatory and/or libelous actions were done within the course and scope of BURGE SR.'s employment with the Village, they were also outside any sort of privilege because he did so knowing the allegations were false, and disclosing these documents at a public board meeting, with the purpose of retaliating against ROBERTS for his calls for investigating the corrupt acts of the Mayor and Chief, as well as intimidating him from making such future inquiries, were outside the official duties of the Chief of Police.

103.  The first document was a letter that BURGE SR. wrote on Village of Dixmoor letterhead, dated March 27, 2014, to the Federal Bureau of Investigations (FBI), wherein he made several statements about ROBERTS that he knew were false and/or were made with reckless indifference.

104.  The second document was an email from BURGE SR. to then Trustee Yvonne Davis, now the Mayor.

16

105. This email was forwarded from Davis' trustee email to the Chief and Davis' village president email address on May 28, 2019.

106. BURGE SR. used police officers to distribute these documents to the public at the meeting, and then followed up with a rant about the false allegations. Included in this rant was the false implication that the FBI was currently investigating the allegations in the documents, which he knew to be untrue and/or was done with reckless indifference, as well as his recounting of the backhoe allegation, with the false and defamatory statement that ROBERTS "benefitted off taxpayers' money" in this incident.

107. Upon information and belief, the FBI is not currently investigating ROBERTS for misconduct.

108. Also, at the time BURGE SR. made this statement, he knew that he brought these same allegations to the Cook County State's Attorney's Office in a meeting on September 25, 2019, and was told specifically by assistant state's attorneys that these allegations were unfounded and/or not criminal.

109. During this same meeting, BURGE SR. was also made aware that, in fact, there were numerous complaints from business owners and citizens against Village police officers that could subject the Village or its officers to civil and/or criminal liability, and that the Office offered to provide training for its officers, which BURGE SR. refused.

110. The Plaintiff is not suing for the actions BURGE SR. took in drafting this letter to the FBI or the email he sent to Davis, but instead in the actions he

took in publicly distributing these documents at a Village board meeting on October 9, 2019, and also in the action he took in verbally defaming ROBERTS at that meeting.

111.	The documents he distributed made several defamatory and/or libelous statements that were falsely and he either knew were false or were made with reckless indifference of the truth of the assertions.

112.	First, the documents falsely claimed that ROBERTS "is alleged in assisting members of his family with the sale of illegal drugs."

113.	ROBERTS has never sold illegal drugs, and has never assisted any family member in selling illegal drugs.

114.	Second, the documents falsely claimed that ROBERTS "has been observed prior to my current employment; in the Dixmoor Police Department Evidence Storage Room with his brother, who is a convicted felon. Also, on numerous occasions they have been seen in the evidence room during the midnight shift."

115.	ROBERTS was never in the evidence storage room locker with his brother, nor were they in the evidence room during the midnight shift.

116.	Third, the email falsely claimed that ROBERTS "us[ed] [a] Dixmoor Village pay loader/backhoe to clean off private property" and that this was done for "personal profit."

117.	BURGE SR. distributed these documents, knowing they contained the above false information and/or did so with reckless indifference to the truth of the

18

matters, intending to cause harm to ROBERT's personal, professional and political reputation.

118.   BURGE SR. also took these actions in retaliation for ROBERTS' acts of calling for an investigation into the corrupt acts of the Chief and the Mayor, and also in an attempt to intimidate ROBERTS into ceasing such calls for an investigation.

119.   As a result of all the actions alleged in this Complaint, the Plaintiffs suffered injuries including but not limited to physical pain, loss of employment and other pecuniary damages, emotional injuries, loss of liberty, as well as embarrassment and damage to reputations.

## COUNT I
**Class of One Equal Protection Claim and Conspiracy to deny the Plaintiffs Equal Protection (42 U.S.C.§ 1983)**
Plaintiffs Mitchell and Roberts v. All Defendant Officers

120.   All of the above paragraphs are incorporated herein.

121.   Plaintiffs Mitchell and Roberts bring a 42 U.S.C.§ 1983 claim against the Defendant Officers for intentionally, capriciously, spitefully, and arbitrarily treating them differently from other similarly situated persons, in violation of their rights under the equal protection clause of the Fourteenth Amendment.

122.   The Defendant Officers formed one or more agreements with one another with DEFENDAND BURGE SR. being the principal conspirator, based on Mitchell's prior sexual harassment claim against BURGE JR. and also based on the public opposition to the Mayor and the Chief shown by MITCHELL and ROBERTS.

123.   There was no rational basis or lawful justification for the targeted singling out of the Plaintiffs.

124.   The Defendant Officers' conduct was malicious, willful, and recklessly indifferent to the Plaintiffs' constitutional rights.

125.   The Plaintiffs suffered serious emotional, physical and pecuniary harm from the actions of the Defendant Officers.

**COUNT II**
*Monell* **Claim**
All Plaintiffs v. Defendant Village

126.   All of the above paragraphs are incorporated herein.

127.   The Plaintiffs bring a 42 U.S.C.§ 1983 claim against Defendant Village for its policy and/or custom and/or practice of failing to train and discipline its officers in general and the Defendant Officers in particular, as well as for the wrongful hiring of BURGE SR., whose history of misconduct is and was common knowledge in the Chicago South Suburbs, and is also easily obtainable by a simple Google search.

128.   The Plaintiffs. further allege that the Defendant Village's hiring decision-maker, the Mayor, had actual knowledge of the BURGE SR.'s history of misconduct, but chose to hire him anyway.

129.   BURGE JR., moreover, was not promoted based on his qualifications, but on his relationship with the Chief.

130.   The remaining Defendant Officers were known to the Mayor to be loyal to the Chief and to act unconstitutionally on his behalf, but were never disciplined.

131.  The Defendant Village's acts and omissions caused the Defendant Officers to violate the Plaintiffs' Constitutional rights, causing the Plaintiffs damages.

### COUNT III - False Arrest (42 U.S.C.§ 1983)
Mitchell v. Burge Sr., Jaco, Willoughby, and Day

132.  All of the above paragraphs are incorporated herein.

133.  Plaintiff MITCHELL brings a 42 U.S.C.§ 1983 claim alleging that on or about April 14, 2019, the Defendants BURGE SR., JACO, WILLOUGHBY, and DAY, arrested the Plaintiff MITCHELL and/or caused her to be arrested without probable cause to believe that she had committed a crime, in violation of her Fourth Amendment rights.

134.  The Defendants' unlawful conduct caused MITCHELL damages, including but not limited to loss of liberty, and pecuniary and emotional damages, as well as loss to her professional reputation.

### COUNT IV- Malicious Prosecution (State Law Claim)
Mitchell v. Burge Sr., Jaco, Willoughby, and Day

135.  All of the above paragraphs are incorporated herein.

136.  Plaintiff MITCHELL brings an Illinois state common law claim alleging that on or about April 14, 2019, the Defendants BURGE SR., JACO, WILLOUGHBY, and DAY, arrested Plaintiff MITCHELL without probable cause to believe that she had committed a crime, in violation of her Fourth Amendment rights, and caused her to be maliciously prosecuted for obstruction.

137.   The Defendants' unlawful conduct, which was willful and wanton, caused MITCHELL damages, including but not limited to loss of liberty, and pecuniary and emotional damages, as well as loss to her professional reputation.

## COUNT V - False Arrest (42 U.S.C.§ 1983)
Mitchell and Baumann v. Burge Sr., Burge Jr. Villegas, and Moore

138.   All of the above paragraphs are incorporated herein.

139.   Plaintiffs MITCHELL and BAUMANN bring a 42 U.S.C.§ 1983 claim alleging that, on or about May 8, 2019, the Defendants BURGE SR., BURGE, JR., VILLEGAS, and MOORE, arrested Plaintiffs MITCHELL and BAUMANN without probable cause to believe that they had committed a crime, causing them to be falsely arrested in violation of their Fourth Amendment rights

140.   The Defendants' unlawful conduct caused MITCHELL and BAUMANN damages, including but not limited to loss of liberty, and pecuniary and emotional damages, as well as loss to their professional reputations.

## COUNT VI - Malicious Prosecution (State Law Claim)
Mitchell and Baumann v. Burge Sr., Burge Jr. Villegas, and Moore

141.   All of the above paragraphs are incorporated herein.

142.   Plaintiffs MITCHELL and BAUMANN bring an Illinois State common law claim for malicious prosecution, alleging that, on or about May 8, 2019, the Defendants BURGE SR., BURGE, JR., VILLEGAS, and MOORE, arrested

Plaintiffs MITCHELL and BAUMANN without probable cause to believe that they had committed a crime, causing them to be maliciously prosecuted.

143.    The Defendants' unlawful conduct caused MITCHELL and BAUMANN damages, including but not limited to loss of liberty, and pecuniary and emotional damages.

## COUNT VII
### Excessive Force (42 U.S.C.§ 1983)
Baumann v. Burge Jr.

144.    All of the above paragraphs are incorporated herein.

145.    Plaintiff BAUMANN brings a 42 U.S.C.§ 1983 claim against BURGE JR. for handcuffing her excessively and unreasonably tightly, without lawful justification, and painfully yanking her arm, causing her injuries including but not limited to physical pain and emotional suffering.

## COUNT VIII
### *Gerstein* Claim (42 U.S.C.§ 1983)
Mitchell v. Burge Sr.

146.    All of the above paragraphs are incorporated herein.

147.    Plaintiff MITCHELL brings a 42 U.S.C.§ 1983 claim against BURGE JR. for causing her to be detained for an unreasonably long period of time on or about May 8 to 9, 2019, for the sole and unlawful objective of having her miss her swearing-in ceremony. This eventuality was avoided only by the filing and granting of an emergency *habeas corpus* petition.

148.    Defendant BURGE SR. caused the Plaintiff injuries including but not limited
        to loss of liberty and emotional suffering, as well as damage to her
        reputation.

## COUNT IX
### False Arrest (42 U.S.C.§ 1983)
Roddrick Mitchell v. Burge Jr.

149.    All of the above paragraphs are incorporated herein.

150.    Defendant BURGE JR. acting unreasonably and without probable cause to
        believe RODDRICK MITCHELL had committed a crime, arrested
        RODDRICK MITCHELL, in violation of his Fourth Amendment rights,
        causing injuries including but not limited to loss of liberty and emotional
        suffering.

## COUNT X
### False Arrest (Excessive Force)
Roddrick Mitchell v. Burge Jr.

151.    All of the above paragraphs are incorporated herein.

152.    Defendant BURGE JR. acting unreasonably and without lawful justification,
        grabbed RODDRICK MITCHELL painfully by the neck and pushed him
        against a building, in violation of RODDRICK MITCHELL's Fourth
        Amendment rights, causing RODDRICK MITCHELL injuries including but
        not limited to physical pain and emotional suffering.

## COUNT XI - Malicious Prosecution (State Law Claim)
Mitchell v. Burge Jr. and Defendant Village

153.    All of the above paragraphs are incorporated herein.

154. Defendant BURGE JR. acting unreasonably and without probable cause to believe RODDRICK MITCHELL or his mother TONI MITCHELL had committed a crime, caused TONI MITCHELL to be maliciously prosecuted for public nuisance, causing injuries including but not limited to pecuniary damages and emotional suffering.

## COUNT XII
### False Arrest (42 U.S.C.§ 1983)
Roberts v. Day and Burge Sr.

155. All of the above paragraphs are incorporated herein.

156. Plaintiff ROBERTS brings a 42 U.S.C.§ 1983 claim against Defendant DAY and Defendant BURGE SR. for arresting or directing the arrest of ROBERTS without lawful justification or probable cause to believe that ROBERTS had committed a crime.

157. The Defendants' unlawful conduct caused the Plaintiff injuries including but not limited to loss of liberty and emotional suffering.

## COUNT XIII
### Excessive Force (42 U.S.C.§ 1983)
Roberts v. Day and Villegas

158. All of the above paragraphs are incorporated herein.

159. Plaintiff ROBERTS brings a 42 U.S.C.§ 1983 excessive force claim against Defendants DAY and VILLEGAS.

160. DAY handcuffed ROBERTS excessively and unreasonably tightly, without lawful justification.

161. VILLEGAS declined to remove or loosen the cuffs afterwards, though he had a duty and opportunity to do so.

162. The Defendants' unlawful conduct caused the Plaintiff injuries including but not limited to physical pain and emotional suffering.

## COUNT XIV
### Malicious Prosecution
Roberts v. Moore and the Village

163. All of the above paragraphs are incorporated herein.

164. Plaintiff ROBERTS brings a malicious prosecution claim against Defendant MOORE and the Defendant VILLAGE for Moore, acting within the course and scope of his employment, on May 31, 2019, issuing a ticket to ROBERTS with no legal basis, a ticket that was eventually dismissed in a manner consistent with the innocence of the Plaintiff.

165. The Defendants' unlawful conduct caused the Plaintiff injuries including but not limited to loss of liberty and emotional suffering.

## COUNT XV
### Defamation and Libel (State Law Claim)
Roberts v. Burge Sr.

166. All of the above paragraphs are incorporated herein.

167. The Plaintiff ROBERTS brings a state law defamation and libel claim against BURGE SR. for distributing printed materials at a public meeting and making certain defamatory statements, alleged in this Complaint, which BURGE SR. knew to be false and/or were done with reckless indifference to

the truth, causing ROBERTS damages including but not limited to emotional injuries and damage to his reputation.

## COUNT XVI
## Civil RICO
Roberts and Mitchell v. Burge Sr.

168. All of the above paragraphs are incorporated herein.

169. ROBERTS and MITCHELL bring a claim against BURGE SR. for violation of the civil RICO statute, 18 U.S.C. § 1962(c); § 1964, for injuries they sustained to their property, which includes the loss keys to their governmental offices, which BURGE SR. has unlawfully kept from them as part of his conspiracy with the Defendant Officers and/or the Mayor and/or others in retaliation and/or to prevent ROBERTS and MITCHELL from investigating the Chief and the Mayor for their corrupt acts.

170. BURGE SR. has engaged in the predicate acts himself and/or has engaged in a conspiracy to commit the predicate acts through one or more agreements with his co-conspirators, the Defendant Officers and/or the Mayor and/or others.

171. The predicate acts and over acts are described in this Complaint.

172. This predicate acts include but are not limited to extortion, felony theft, mail fraud, wire fraud, financial fraud, obstruction of justice, intimidation of witnesses, bribery, and official misconduct under federal and state law.

173. BURGE SR. has engaged in these acts through an enterprise, namely the Dixmoor Police Department, which engages in interstate commerce through,

*inter alia*, the purchase of supplies and the conducting of law enforcement activities through interstate commerce.

174. MITCHELL and ROBERTS suffered damage to their property, and suffered damages that include the loss their keys to do their job effectively, and also which has resulted in emotional injury as a result.

175. Pursuant to the statute, the Plaintiffs seek treble damages and attorneys' fees on this count.

### COUNT XVII
### Indemnification (State Law Claim)
All Plaintiffs v. Defendant Village

176. Each paragraph of this Complaint is fully restated herein.

177. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

178. The Defendant Village is the indemnifying entity for the actions of individual Defendants who acted under color of law and in the course and scope of their employment with the Village.

WHEREFORE, the Plaintiffs seek compensatory damages, as well as attorneys' fees and costs, and any further relief this Court may deem equitable and just. Additionally, the Plaintiffs seeks punitive damages against the individual Defendant Officers. The Plaintiffs also seek injunctive relief against Defendant Burge Sr. to force him to give them keys to their own government offices.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

/s/ Richard Dvorak
Richard Dvorak, One of the
Attorneys for the Plaintiffs.