UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONI MITCHELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 20 C 436 |
| ) | |
| VILLAGE OF DIXMOOR, et al., ) | |
| ) | |
| Defendants. ) | |

**CHARLES P. KOCORAS, District Judge:**

**MEMORANDUM OPINION**

Before the Court is Defendant Village of Dixmoor's (the "Village") motion to dismiss Plaintiffs Toni Mitchell's ("Mitchell") and Fitzgerald Robert's ("Robert") (collectively, "Plaintiffs") Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the Village's motion.

**BACKGROUND**

For the purposes of this motion, the Court accepts as true the following facts from Plaintiffs' SAC. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiffs' favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

This action involves an intricate web of allegations brought against the Village, its employees, and related defendants for a wide variety of corrupt or illegal acts. The general thrust of the allegations is that individuals affiliated with the Village retaliated against and intimidated Mitchell and Roberts, two Dixmoor Village Trustees, that had expressed opposition to the Village Mayor and Police Chief. The Village maintains in response that "Plaintiffs filed this matter purely for political reasons with a local Village election looming next year."

Perhaps. But the Court's role is to make a legal determination as to this motion—not to wade into the intricacies of local Dixmoor politics. At the same time, to make sense of the allegations we must first be introduced to the various involved parties. Plaintiffs Mitchell and Roberts are members of the Board of Trustees for the Village. Deidre Baumann ("Baumann") is Mitchell's attorney and Roddrick Mitchell ("Roddrick") is Mitchell's son. Ronald Burge Sr. ("Burge Sr.") is the Village's Chief of Police and Yvonne Davis ("Davis") is the Village's Mayor. Burge Sr. hired his son Ronald Burge Jr. ("Burge Jr.") as Commander of the Village Police. Plaintiffs allege that Burge Sr. is corrupt and that he recruited police officers Jose Villages, Hashi Jaco, Keith Willoughby, Marquise Day, and Billy Moore (collectively, the "Officer Defendants") to assist with his corrupt acts. The Court will document these acts chronologically.

On April 14, 2019, Mitchell was arrested and charged with obstruction of justice for failing to provide information about the whereabouts of her adult son who was

2

wanted for domestic battery. Some of the Officer Defendants allegedly arrested her, took her to the police station, and held her without probable cause.

On May 3, 2019, Burge Jr. approached Roddrick, grabbed him by the neck and shoved him against the house. Burge Jr. then took Roddrick to the police station. Roddrick was never charged and Mitchell alleges that Burge Jr. lacked probable cause to believe that Roddrick had committed a crime. Mitchell was cited for an ordinance violation for Roddrick's alleged misconduct. That ordinance citation was ultimately dismissed.

A few days later, on May 8, 2019, Mitchell and her attorney Baumann drove to the home of the mother of Mitchell's grandchildren ("Myeisha"). Myeisha had given Mitchell permission to be in the home. Mitchell and Baumann entered the home, which they found ransacked, and Mitchell took some of her personal items from inside. Mitchell and Baumann were approached by one of the Officer Defendants who told them that they did not have permission to be in the home. They were arrested and Baumann was handcuffed in a manner that was unreasonably tight and painful even though she did not resist. Mitchell and Baumann were charged and held for an unreasonably long period. Mitchell was held in custody for a period longer than Baumann allegedly so that she would miss her swearing-in ceremony as a trustee. The trespassing charges were ultimately dismissed.

Plaintiffs also allege that Burge Sr. instructed the Officer Defendants to follow, surveil, and intimidate Plaintiffs on numerous other occasions. On one occasion, they

3

allege that they were followed on their way to Portillo's. That same day, a Village Police vehicle was also parked in front of Roberts' house. And, on May 16, 2019, Burge Sr. told Roberts to "drive safe and stay safe," while Plaintiffs were still at the Village Hall. Plaintiffs allege that similar intimidating acts continued, including through private investigators.

Then, on May 31, 2019, one of the Officer Defendants wrote Roberts a ticket for illegal dumping as Roberts loaded branches from a street into his truck. The ticket was later dismissed.

And, on June 15, 2019, another Officer Defendant approached Roberts and arrested him even though he knew that Roberts had not committed a crime. After being taken to the police station, Roberts was released without any charges.

Finally, on June 13, 2019, Burge Sr. mentioned at a Village meeting that Roberts had spoken poorly of the police and that Roberts would "need bail money" if he continued to do so. At a Village meeting in October 2019, Burge Sr. also allegedly disseminated documents with false information about Roberts. The documents included statements about how the Federal Bureau of Investigation ("FBI") was investigating Roberts, how Roberts was assisting criminals with the sale of drugs, and how Roberts was engaged in other acts of corruption.

Against this factual backdrop, the Complaint alleges, among other things, that the Village is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

4

658 (1978) because of the Village's "general," Compl., at ¶ 128, failure to train police officers and because the Village wrongfully hired Burge Sr.

## LEGAL STANDARD

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the facts alleged in the complaint and not the merits of the case. Fed. R. Civ. P. 12(b)(6); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true all well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The factual allegations in the complaint must state a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint does not require detailed factual allegations but must provide sufficient factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide a defendant with fair notice of the claim's basis and also must be facially plausible. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere conclusory statements or a "formulaic recitation of the elements of a cause of action" are insufficient pleadings to overcome a Rule 12(b)(6) motion to dismiss. *Id.* at 678-79.

**DISCUSSION**

The Village's present motion argues that Plaintiffs' SAC fails to state a *Monell* claim because Plaintiffs have inadequately identified a tangible Village custom or policy that was the "moving force" behind Plaintiffs' harm. We agree with the Village and dismiss Plaintiffs' claim without prejudice.

Generally, "[g]overnmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). A *Monell* plaintiff must also plead that the policy or custom is the "moving force of the constitutional violation." *Monell*, 436 U.S. at 694–95. *Monell* liability usually comes in one of three forms: "1) evidence of enforcement of an express policy that would cause the constitutional deprivation; 2) evidence of a common practice so widespread it constituted a custom or usage with the force of law, despite not being a written or express policy; or 3) evidence that a person with final policy-making authority caused the harm." *Jones v. Hunt*, 2020 WL 814912, at *1 (N.D. Ill. 2020) (citing *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015)). Plaintiffs arguably seek relief under all three prongs, which the Court addresses in turn.

Initially, Plaintiffs have not provided evidence of enforcement of an express policy. Indeed, the SAC completely "lacks factual content that describes the existence of an express policy. Thus, the Court cannot reasonably infer a plausible *Monell* claim based on an express policy." *Johansen v. Curran*, 2016 WL 2644863, at *7 (N.D. Ill.

6

...

2016) (Kocoras, J.). It is also well-settled that a Plaintiff "may not simply add *Monell* boilerplate allegations and proceed to discovery in the hope of turning up some evidence to support his claims." *Kowalski v. Cty. of Dupage, Ill.*, 2013 WL 4027049, at *2 (N.D. Ill. 2013) (Kocoras, J.). Accordingly, we dismiss this prong of Plaintiffs' *Monell* claim.

The SAC also does not cogently establish municipal liability based on a widespread Village custom. This is because the gravamen of a *Monell* claim "is not individual misconduct by police officers." *Rossi*, 790 F.3d at 737. Rather, misbehavior by "a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution *as a whole*." *Id.* (emphasis added). Here, Plaintiffs have not pled that the Officer Defendants acted under the color of any broad-based institutional custom. Instead, Plaintiffs have relied on the conclusory allegations that there has been a top-down conspiracy to retaliate against Plaintiffs. Such broadly worded allegations amount to boilerplate, which the Court rejects. *Kowalski*, 2013 WL 4027049, at *2; *accord Payne v. Cty. of Cook*, 2016 WL 1086527, at *18 (N.D. Ill. 2016) (the Court "can easily dispose of the broadly worded allegations").

The Court is particularly puzzled here because the SAC does not "clearly identify the custom or practice that allegedly caused" Plaintiffs' injuries. *Jones*, 2020 WL 814912, at *2; *accord Armour v. Country Club Hills*, 2014 WL 63850, at *7 (N.D. Ill. 2014) ("[t]he allegations are in no way tailored to identify particular police training procedures or policies."). What is the concrete Village custom at issue here? How did that specific custom causally harm Plaintiffs? *See Maglaya v. Kuminga*, 2015 WL

7

4624884, at *5 (N.D. Ill. 2015) (observing that courts require *Monell* plaintiffs to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights."); *Mikolon v. City of Chicago*, 2014 WL 7005257, at *5 (N.D. Ill. 2014) (similar). And, most critically, why are the individual incidents here attributable to the Village and not just to the Officer Defendants?

At this stage, the best the Court can surmise is that the problematic custom is merely that the Village generally condoned illegal acts. Indeed, Plaintiffs' themselves describe the applicable custom as a "culture of lawlessness." Dkt. #25 at 5. But, if a general "culture of lawlessness" were actionable, then every *Monell* plaintiff could attribute any individual illegal act to the municipality. The level of generality Plaintiffs ask the Court to condone is simply too great; a "custom" cannot be just illegality in general. That is not how *Monell* works. *See Rossi*, 790 F.3d at 737. After all, the purpose of the "policy" or "custom" requirement is to firmly and clearly "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is *actually responsible*." *Grieveson*, 538 F.3d at 771 (emphasis added).

At this stage, the Court cannot let a claim about the "*general*" failure, Compl., at ¶ 128., to "train and discipline" officers proceed. Plaintiffs have simply not presented a cogent narrative that adds up and allows us to at all infer municipal liability from the actions of the individual Officer Defendants. Nor is Dixmoor currently on fair notice of what it did wrong or of what flawed custom or practice it must remedy prospectively.

8

At the same time, the Court recognizes that the purpose of a motion to dismiss is not for us to wade too deeply into the facts or to weigh competing inferences. Instead, we must give Plaintiffs the benefit of the doubt. Thus, we dismiss this prong of Plaintiffs' *Monell* claim without prejudice. Plaintiffs have twenty-one (21) days to amend their complaint in a way that lucidly identifies what Village custom or policy actually harmed Plaintiffs.

In dismissing this portion of the *Monell* claim without prejudice, we remind Plaintiffs of three key principles. First, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This is because the failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* Second, "fishing expedition[s]" are disfavored and unlikely to be sanctioned by the Court. *Armour*, 2014 WL 63850, at *7. And third, that claims "lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

Finally, we also dismiss Plaintiffs' claim that the Mayor's decision to hire Burge Sr. is actionable because the Mayor is a final policy-making authority that caused Plaintiffs harm. As currently pled, Plaintiffs cannot state a claim because the "mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority" necessary to state a claim under *Monell*. *Kujawski v. Bd. of*

9

*Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999). Accordingly, this component of Plaintiffs' *Monell* claim is similarly dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants the Village's motion. Count II is dismissed without prejudice. If Plaintiffs wish to proceed with this Count, they have twenty-one (21) days to file an amended complaint consistent with the terms of this opinion. Telephonic status hearing is set for 1/7/2021 at 10:00 a.m. It is so ordered.

Dated: 1/4/2020

*[signature]*
_____
Charles P. Kocoras
United States District Judge