UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONI MITCHELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 20 C 436 |
| ) | |
| VILLAGE OF DIXMOOR, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge**:

Before the Court are two Motions to Dismiss Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the Motions in part.

### BACKGROUND

This Opinion presumes familiarity with the factual background of this matter because this case has already been the subject of a lengthy, prior opinion. *See Mitchell v. Vill. of Dixmoor*, 2021 WL 25542, at *1 (N.D. Ill. 2021). As the Court recounted in that Opinion, this action "involves an intricate web of allegations brought against the Village [of Dixmoor], its employees, and related defendants for a wide variety of corrupt or illegal acts. The general thrust of the allegations is that individuals affiliated with the Village retaliated against and intimidated Mitchell and Roberts, two Dixmoor

1

Village Trustees, that had expressed opposition to the Village Mayor and Police Chief." *Id.* at *1.

Pertinent here, the Court's prior Memorandum Opinion dismissed the claims without prejudice against the Village under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), largely because Plaintiffs could not fairly attribute individual incidents to the Village. *See id.* at *3. Subsequent to the issuance of that Memorandum Opinion, Plaintiffs submitted a Third Amended Complaint ("Complaint"). That Complaint is now before the Court because the Officer Defendants have moved to dismiss Counts I, V, VII, and XVI of the Complaint; and the Village has renewed its Motion to dismiss Count II, the *Monell* claim. The Court will address each Motion in turn.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678. With this framework in mind, the Court addresses Defendants' arguments in turn.

## DISCUSSION

**1. The Officer Defendants' Motion**

The Officer Defendants move to dismiss Counts I, V, VII, and XVI of the Complaint. First, the Officer Defendants argue Plaintiffs' Class of One Equal Protection Claim (Count I) must be dismissed because Plaintiffs fail to plead facts identifying "the others similarly situated" they were treated differently from by the Officer Defendants. Second, the Officer Defendants assert Plaintiffs' false arrest claim (Count V) fails because Plaintiffs did not plead the Officer Defendants lacked probable cause. Third, the Officer Defendants contend Plaintiff Baumann's excessive force claim (Count VII) must be dismissed because Plaintiff failed to describe the level of degree of force used to effectuate the arrest. Finally, the Officer Defendants argue Plaintiffs lack standing to pursue their RICO claim (Count XVI). The Court addresses each argument in turn.

### a. Count I: Equal Protection Claim

In Count I, Plaintiffs allege a "Class of One" Equal Protection Claim because the Officer Defendants "intentionally, capriciously, spitefully, and arbitrarily" treated Plaintiffs Mitchell and Roberts differently than "other similarly situated persons." Dkt. # 34, ¶ 133. The Officer Defendants argue that Plaintiffs have not stated a claim because Plaintiffs have not identified "others similarly situated to them." Dkt. # 38, at 4.

To plead a "class of one" equal protection claim, a plaintiff must allege that: (1) "[s]he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). "Class of one" claims like this one are usually difficult to sustain. *See id.*

Here, Plaintiffs have at least pled a "class of one" claim, even though they may not prevail at summary judgment or at trial. Plaintiffs allege a long history of individual incidents targeted at them specifically. Contrary to the Officer Defendant's urging, there is no absolute requirement that comparators be named at this stage in the case. *See Geinosky v. City of Chic.*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) ("Even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint."). On this basis, the Court denies the Officer Defendants' Motion concerning Count I. Discovery may proceed on this Count.

### b. Count V: False Arrest of Plaintiffs Mitchell and Baumann

In Count V, Plaintiffs Mitchell and Baumann allege that several of the Officer Defendants falsely arrested them in violation of the Fourth Amendment. In response, the Officer Defendants argue Plaintiffs have not stated a claim because they have not asserted that the Officer Defendants lacked probable cause to arrest Plaintiffs Mitchell and Baumann.

The problem with the Officer Defendants' argument is that they seek to "establish" that "the officers *had* probable cause for the arrest." Dkt. # 38, at 6 (emphasis added). The Court declines to make that factual determination about what did happen at the motion to dismiss stage because it lacks that power. *See Keefe v. Marquette Cnty.*, 31 F. App'x 334, 336 (7th Cir. 2002) (noting judges do not have "the power to make factual findings in ruling on that motion to dismiss").

Specifically, the Complaint, taken in the light most favorable to Plaintiffs plausibly alleges a false arrest—meaning an arrest without probable cause. The Complaint alleges the relevant Officer Defendants lacked "probable cause" to arrest Plaintiffs Mitchell and Baumann. Dkt. # 34, ¶ 66. Significantly, the Complaint alleges that Defendant Officer Villegas had orders from Defendant Burge Sr. to arrest Mitchell and Baumann, even though Officer Villegas—not Burge Sr.—personally saw the occurrences underlying the arrest at the trailer park. *Id.* ¶ 58.

The Officer Defendants' Reply establishes that dismissal would be inappropriate at this stage. In pertinent part, the Reply reads: "Based on Plaintiffs' allegations alone,

it *was reasonable* for defendant officer Villegas to believe Mitchell and Baumann *were committing* criminal trespass. Instead of setting forth a claim for lack of probable cause, the allegations *establish* the opposite, that Defendant Officers *had probable cause* for the arrests." Dkt. # 42, at 3 (emphasis added). But, the Court declines, as it must, to decide at this stage whether Defendant Villegas acted "reasonabl[y]," whether Mitchell and Baumann did in fact "commit[]" criminal trespass, or whether the Officer Defendants "*had* probable cause." *See Keefe,* 31 F. App'x at 336; *see also United States v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010) (holding that probable cause determinations, which require finding out "what happened," are questions of fact). The Court denies the Motion to Dismiss Count V.

### c. Count VII: Excessive Force Against Baumann

In Count VII, Plaintiffs allege Defendant Burge Jr. used excessive force without lawful justification in arresting Baumann by "handcuffing her *excessively and unreasonably tightly* . . . causing her injuries including but not limited to physical pain and emotional suffering." Dkt. # 34, ¶ 159 (emphasis added). In response, the Officer Defendants argue this Count must be dismissed because "Plaintiff Baumann only alleges she was handcuffed unreasonably tight and her arm was yanked painfully at the time of her arrest." Dkt. # 38, at 6.

True, "the act of placing handcuffs on an individual is a form of force" that is "deemed reasonable and acceptable under the Fourth Amendment." *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *4 (N.D. Ill. 2013). Given that, Baumann must "plead

6

some facts that describe the force the officers used in executing the arrest so that the Court can ascertain whether it was plausibly excessive." *Id.*

That is what Plaintiff Baumann has done here. She alleges her handcuffs were "unreasonably tight[]" and that tightness caused, among other things, pain and suffering. Dkt. # 34, ¶ 65. While additional factual contour would be nice, the Court is not comfortable—on the basis of the pleadings alone—making the factual determination that the force used was not excessive. *See Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (collecting cases where courts have denied motions to dismiss in excessive force cases where, among other things, the handcuffs were "applied so tightly" that a plaintiff suffered nerve damage). Discovery is required to determine, among other things, whether Baumann was "threatening to harm the police officer or anyone else at the scene," was "resisting or evading arrest," or was "attempting to flee." *Id.* at 779. The Court also denies the Motion to Dismiss Count VII.

### d. Count XVI: Civil RICO

Section 1964(c) of the RICO statute allows "[a]ny person injured *in his business or property* by reason of a violation of section 1962" to sue for treble damages, costs, and attorney's fees. *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2106 (2016). The term "in his business or property" excludes "personal injuries." *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992). "Thus, 'a civil RICO action cannot be premised solely upon personal or emotional injuries.'" *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017) (quoting *Doe*, 958 F.2d at 767). To state a claim under

7

Section 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *United States v. Shamah*, 624 F.3d 449, 454 (7th Cir. 2010).

Defendants' first argument is that Plaintiffs have not established civil RICO standing in that they have not pled they were injured in their "business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011). Plaintiffs' narrow response is that they "sustained injuries to their property including the withholding of keys to their governmental offices." Dkt. # 40, at 10. Thus, the question before the Court is whether the withholding of keys to a governmental office is a "business or property" injury under Section 1964. The Court holds that it does not.

The words injury to "business or property" are "words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Doe*, 958 F.2d at 767. In line with that limitation, a plaintiff must allege a "concrete financial loss," which does not encompass a "mere injury to a valuable intangible property interest." *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 860 (N.D. Ill. 2008) (Filip, J.) (cleaned up). Put another way, "injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous." *Id.* (cleaned up). Business or property injuries must be "clear and definite." *Jackson v. Klein, Thorpe & Jenkins, Ltd.*, 2017 WL 3263476, at *5 (N.D. Ill. 2017) (internal citation omitted).

8

Here, Plaintiffs' alleged injuries fall short because they are neither "clear" nor "definite," and because there is no allegation that Plaintiffs' suffered an "actual, concrete monetary loss." *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002). And, without "economic loss," Plaintiffs lack civil RICO standing. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997).

None of this discussion is to say that Plaintiffs cannot ultimately find redress for their grievances; the chief point here is that RICO is not the proper vehicle for doing so. This is because "Congress created the civil remedies provision solely to afford relief to those injured in the legitimate business arena." *James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 816 (W.D. Ky. 2000), *aff'd*, 300 F.3d 683 (6th Cir. 2002).

**2. The Village's Motion About Plaintiffs' *Monell* Allegations**

In Count II, Plaintiffs bring a *Monell* claim against the Village for "its policy and/or custom and/or practice of failing to train and discipline its officers in general . . . as well as for the wrongful hiring of BURGE SR." Dkt. # 34, ¶ 139. Generally, "[g]overnmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). A *Monell* plaintiff must also plead that the policy or custom is the "moving force of the constitutional violation." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978). *Monell* liability usually comes in one of three forms: "1) evidence of enforcement of an express

policy that would cause the constitutional deprivation; 2) evidence of a common practice so widespread it constituted a custom or usage with the force of law, despite not being a written or express policy; or 3) evidence that a person with final policy-making authority caused the harm." *Jones v. Hunt*, 2020 WL 814912, at *1 (N.D. Ill. 2020) (citing *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015)).

Once again, Plaintiffs failed to provide evidence of enforcement of an express policy. The Complaint completely "lacks factual content that describes the existence of an express policy," preventing the Court from reasonably inferring a plausible *Monell* claim based on an express policy. *See Johansen v. Curran*, 2016 WL 2644863, at *7 (N.D. Ill. 2016) (Kocoras, J.). The Court therefore dismisses this prong of Plaintiffs' *Monell* claim.

The Complaint further fails to "clearly identify the custom or practice that allegedly caused" Plaintiffs' injuries. *Jones*, 2020 WL 814912, at *2; *accord Armour v. Country Club Hills*, 2014 WL 63850, at *7 (N.D. Ill. 2014) ("[t]he allegations are in no way tailored to identify the particular police training procedures or policies."). A plaintiff pleading a claim premised on a failure to train an officer must meet a high threshold to establish the claim because "'[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Jones*, 2020 WL 814912, at *3 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees]

10

come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Connick*, 563 U.S. at 61 (internal quotation marks and citations omitted). Plaintiffs make no effort to refute Defendants' arguments with respect to the purported "failure to train and discipline" aspect of their *Monell* claim. As such, the Court dismisses this prong of Plaintiffs' *Monell* claim as well.

Plaintiffs focus their Response on the third prong of *Monell* liability: that a person with final policymaking authority caused Plaintiffs harm. "In order to have final policymaking authority, an official must possess 'responsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004) (*citing Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003)). Helpful in determining whether an official is a final decisionmaker is an inquiry into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009); *see also Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780–81 (7th Cir. 2011) ("Whether a public official has final policymaking authority often turns on whether his decisions are subject to review by a higher official or other authority.").

11

"[T]he cases limit liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority." *Gernetzke v. Kenosha Unified Sch. Dist. No 1*, 274 F.3d 464, 469 (7th Cir. 2001). The Court noted in its previous dismissal order that "the 'mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority' necessary to state a claim under *Monell*." Dkt. # 27, at 9–10 (quoting *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999)). Instead, there must be a delegation of authority to set *policy* for hiring and firing, not a delegation of only the final authority to hire and fire. *Kujawski*, 183 F.3d at 739 (collecting cases).

Plaintiffs allege Davis's authority as final policymaker stems from Section 2-14 of the Village of Dixmoor Village Code, which provides:

> Sec. 2-14. APPOINTMENTS. All officers of the village, other than elective officers, shall be appointed by the village president with the advice and consent of the village board of trustees as provided by state law. All employees shall, in the absence of any provision to the contrary, be appointed or selected or removed by the department heads subject to approval by the village president and board of trustees.

Dixmoor Village Code, § 2-14 (2019). But what this section of the Village Code makes clear is that officers can only be appointed by Davis with the "consent of the village board of trustees," and officers are subject to removal by Davis with the "approval" of the board of trustees. This demonstrates Davis's decisions with respect to hiring and firing are subject to meaningful review by the board of trustees.

12

In *Valentino*, a case upon which Plaintiffs rely in support of their claims, the Seventh Circuit found a mayor could have final policymaking authority where, under the village code, the mayor or village president had unrestrained authority to make personnel decisions and the village administrator could only make recommendations to the mayor as to who they should hire or fire. 575 F.3d at 677–78. As noted above, that is not the case here. The village board of trustees shares the authority to hire and fire with Davis, and the board of trustees is not in a mere advisory capacity as in *Valentino*. Plaintiffs' *Monell* claims fail. The Court grants the Village's motion to dismiss Count II of the Complaint.

## **CONCLUSION**

For the foregoing reasons, the Officer Defendants' Motion to Dismiss is GRANTED with respect to Count XVI and DENIED with respect to Counts I, V, and VII. The Village's Motion to Dismiss is GRANTED with respect to Count II. Telephonic status is set for 9/23/2021 at 10:00 a.m.

It is so ordered.

Dated: August 13, 2021

                                                                                      Charles P. Kocoras
                                                                                      United States District Judge